IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 19-3595 KWR |
| | ) | |
| **ANGELITA BENALLY**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES RESPONSE TO DEFENDANT'S OBJECTIONS TO THE SECOND ADDENDUM TO THE PRESENTENCE REPORT**

The United States responds to Defendant's Objections to the Second Addendum to the Presentence Report. Doc. 55 ("Objections"). As the Court no doubt recalls, this case arises from the Defendant — Angelita Benally — driving the wrong way drunk on Interstate 40, and crashing into another vehicle. In the process, she killed her passenger, seriously harmed the other vehicle's driver, and destroyed both her car and the other car. The Objections concern the restitution owed to the other vehicle's driver, Juan Garibo Maganda.

In the Second Addendum, the Probation Office detailed three rough categories of restitution that the victim, Maganda requests: (i) medical expenses; (ii) the car value; and (iii) personal items lost or destroyed in the crash. Doc. 53. In her Objections, Benally does not contest the medical expenses, but objects to the vehicle and personal item amounts. Objections at 4-8. As to the vehicle, Benally questioned whether Maganda owned it, and challenged the value requested. Id. at 5-6. On September 24, 2020, the Court held an initial hearing on restitution and ruled with respect to Maganda's personal items and the medical expenses. The United States does not challenge that ruling here. Accordingly, the only outstanding restitution issues are whether Maganda owns the vehicle and, if so, how much restitution should the Court award him.

Maganda owned the vehicle — a 2014 silver Nissan Altima with California license plate 7CSU677 and VIN 1N4AL3AP4EN214689.  At the crash scene, law enforcement ran a query on that California license plate and "Maganda, Juan Daniel Garibo" came back as the "R/O" or registered owner.  Ex. 1.   A California car registration card covering the period when Benally destroyed the vehicle also shows "Maganda Juan Daniel Garibo" as the "registered owner" of a 2014 Nissan with matching VIN.  Ex 2.  In addition, Maganda is the named driver of the car insurance that was effective on the night of the crash.  Ex. 3.[1]  Maganda is the car owner.

Thus, the restitution amount is the only remaining issue.  When calculating a restitution amount, "absolute precision is not required."  United States v. Gallant, 537 F.3d 1202, 1252 (10th Cir. 2008).  Rather "[a] sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss."  Id.; see United States v. Kalu, 791 F.3d 1194, 1214-15 (10th Cir. 2015).  In determining "value" or the victim's loss in terms of a restitution award, however, there is no one approach.   "[I]n addition to fair market value, courts have approved the use of replacement cost, foreclosure prices, and cost to the victim."  United States v. Howard, 887 F.3d 1072, 1076 (10th Cir. 2018) (internal citations omitted).  What approach is appropriate depends on the "particular factual circumstances" of the case with an eye towards ensuring that victims "are made whole for their losses" but also "that the victim does not receive a windfall.  Id. 1076, 1078.

---

[1]That Maganda had insurance, however, does not affect the restitution calculation.  "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B).

Here, Maganda purchased the vehicle used on February 17, 2018 — just shy of a year before the crash — with a cash price of the car at $17,299.  Ex. 4 at 1-2.  He did secure a loan to purchase it, putting down $1,300 up front and agreeing to pay $219 on a biweekly basis starting on March 12, 2018.  Id. at 1.  Ganas Auto Group is a lienholder on the car.  Id.; ex. 2.  A year before the crash, the car had 55,962 miles on it.  Ex 4 at 1.

Maganda is entitled to restitution of the "fair market value" of the vehicle.  United States v. Howard, 887 F.3d 1072, 1076 (10th Cir. 2018).  The fair market value is the best approach here (as opposed to the replacement value or some other valuation method), because the car is not a unique item and there is an ascertainable market for used Nissan Altimas.  United States v. Boccagna, 450 F.3d 107, 109 (2d Cir. 2006)("[F]air market value will generally provide the best measure to ensure restitution in the 'full amount' of the victim's loss," recognizing "however, . . . where property is unique or where no active market exists for its purchase, other measure of value may better serve the MVRA's compensatory purpose."); see United States v. Howard, 887 F.3d 1072, 1076 (10th Cir. 2018)("We have cited *Boccagna* with approval.").  See also United States v. Steele, 897 F.3d 606, 611 (4th Cir. 2018) (noting that the fair market value is the best approach for fungible goods).  Moreover, despite an outstanding lien, the fair market value does not provide a windfall to the victim, because whatever amount secured in a sale would reduce the victim's obligated payoff amount.

To meet its burden of proof for the value of the vehicle, the United States submitted several estimates from different sources of the fair market value of a used 2014 Nissan Altima.  Doc. 53; Ex. 5 (providing estimates ranging from $5,424 to $10,750).  The estimates include input values of a 2014 Nissan Altima, the base model (e.g., cheapest) of a 4dr 2.5 cylinder sedan and a mileage of 62,000, which was estimated by the victim.   The details on the sales contract are consistent

with those inputs, showing, for example, that the car is a 4 door and that it had a mileage of 55,926. Ex. 4 at 1.  The United States averaged the median values of the estimates and submitted that figure as a restitution amount.

Benally, however, complains about these estimates not reflecting the actual value of this *particular* car.  Objections at 5-6.  In so doing, she suggests that the Untied States cannot meet its burden if all it does is submit estimates without zeroing in on all of the car's minutia.  Id.  For example, she asserts a more precise figure could be obtained if we knew the "frame damage, body work and paint, interior condition, tire condition, aftermarket modifications, mechanical problems, etc." Objections at 5,   That kind of analysis flies in the face of the Tenth Circuit's words that "absolute precision is not required."   Gallant, 537 F.3d at 1252.  "Congress intended to authorize expeditious and reasonable calculations of restitution by resolving uncertainties with a view towards achieving fairness to the victim, rather than by requiring that district courts exercise great precision in fixing the amount of restitution due."  United States v. Mahone, 453 F.3d 68, 74 (1st Cir. 2006) (internal citations omitted).

The Tenth Circuit's guidance about precision makes sense in this particular context.  There is no dispute the vehicle is a total loss.  Ex. 6.  We will never know with crystal clear precision what the fair market value of this car is because Maganda will never be able to sell this particular car on any market.  The reason for that is Benally drove drunk and destroyed it.  For the same reason, we will not know the "tire conditions" or even the mechanical issues of the vehicle right before the crash.  Benally destroyed the evidence of those particular factors.  Estimates of this car's market value is what the parties have.

Moreover, awarding restitution based on an estimate of a car value is an approach ratified by at least one circuit court of appeals.  In United States v. Russo, the Third Circuit affirmed a

4

restitution award for a car based on the "Marshal's Service estimate" of the "value of the vehicle." United States v. Russo, 166 F. App'x 654, 664 (3d Cir. 2006); see United States v. Piatz, 1999 WL 50849, at *2 (7th Cir. 1999) (unpublished) (affirming a restitution award for stolen military hardware where the district court "estimated the total loss of the vehicles" using, in part, an expected "auction price").  An estimate is even more appropriate here than in Russo, because the car in Russo was not destroyed or damaged in any way.  Conceivably, they could have tried to put that car on a market to get a value.  Here, in contrast, no one is going to buy Maganda's car for any where near the value it would have commanded five minutes before the crash.  An estimate is what we have.

The United States has provided estimates from various sources, such as Kelley Blue Book, and those estimates are supported by the most legally sound anchor for an estimate of the market value we have; the most recent sale value of it, a year before the crash, which was $17,299.  See United States v. Mahone, 453 F.3d 68, 74 (1st Cir. 2006)("[W]e conclude that the district court made the proper determination of the restitution due by using the actual selling price of the vehicle.").  Of course car values depreciate, but the dealership felt it was in such a condition that it could command and it, indeed, did command a price over $17,000 in 2018.  Ex. 4.  To be clear, the United States is not suggesting a $17,000 restitution amount would be appropriate.  Car values depreciate once you drive it off the lot.  But that 2018 sales value is evidence that the Altima was in fairly good shape a year before the crash and lends support to the range offered by the United States between approximately $5,000 and $10,000.  It shows the estimated range is not outlandish. A value, for example, of $10,000 represents about 40% depreciation in one year, whereas $5,000 is fairly conservative, representing almost 70% depreciation in one year.

The United submitted previously that a rough average of the estimates obtained would be appropriate, but it would not object if the Court awarded restitution by estimating the value of the car at the conservative end of the range provided.  See United States v. Parker, 555 F.3d 1309, 1325-26 (10th Cir. 2009) (affirming a restitution amount where "[v]iewed as a whole, the restitution amount conservatively reflected the actual losses to victims.").  In conceding that a low end award would be fair, it acknowledges some of the uncertainties and that a lien on the vehicle would negatively affect the car value.  But an amount at the low end is supported by this record and resolving this now at a fair price comports with the Mandatory Victim's Rights Act.   The point of the Act is "to obtain a reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." Id. at 1326.  Awarding nothing, as Benally suggests is appropriate with this record, would not be resolving uncertainties with a view toward achieving fairness to the victim.

Benally destroyed this car.  There is no doubt Maganda owned it.  It had a market value of over $17,000 within a year of the crash.  A restitution amount of at least $5,424 is supported by this record.  For the foregoing reasons, the United States request the Court award at least $5,424 in restitution for the silver Nissan Altima.

Respectfully submitted,

JOHN ANDERSON
United States Attorney


*Electronically filed on October 1, 2020*
FREDERICK T. MENDENHALL
Assistant United States Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 224-1419

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court using
the CM/ECF system, which will cause a copy of
this filing to be sent to counsel for Defendant.

*/s/*
FREDERICK T. MENDENHALL
Assistant United States Attorney

7